NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| **JOSEPH WILLIAMS,** | : | |
| | : | **Civil Action No.: 08-2389 (ES)** |
| **Plaintiff,** | : | |
| | : | **OPINION** |
| **JERRAMIAH T. HEALY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**SALAS, DISTRICT JUDGE**

## I.     Introduction

Pending before this Court is a motion for summary judgment, ("Def. Moving Br.," Docket Entry Number, ("D.E."), 115), filed by Sergeant Heriberto Carratini, Sergeant Miguel Reyes, Police Officer William Figeroa, Police Officer James Crecco, Police Officer Erik Infantes, and the City of Jersey City (collectively, "Jersey City Defendants" or "Defendants"). The Court has jurisdiction under 28 U.S.C. § 1331.[1]   The Court has reviewed the parties' submissions, including Defendant's moving brief, *pro se* Plaintiff's untimely opposition brief, ("Pl. Opp. Br.," D.E. 123), Defendants' reply letter, ("Def. Reply Br.," D.E. 126), Plaintiff's sur-reply, ("Pl. Sur-Reply Br.," D.E. 127), for which Plaintiff never sought leave, and all related affidavits, certifications, and exhibits.  The Court decides the motion on the papers without oral argument under Fed. R. Civ. P. 78(b).  For the following reasons, the Court GRANTS in part and DENIES in part Defendants' motion.

---

[1]The matter does not appear to be stayed as Plaintiff appears to argue.  (*See* Pl. Opp. Br. at 3 Ex. C).

II.    **Background**[2]

    A.    **Investigation and Arrest**

        1.    **Undisputed Facts**

Sergeant Miguel Reyes set up surveillance of 448 Central Avenue based on tenants' complaints of heavy pedestrian traffic within the building during the day and night of unfamiliar individuals, who were not tenants.   (Police Report attached as Ex. F. to Def. Moving Br.). Additionally, anonymous tipsters provided Sergeant Reyes with a description of two residents of 448 Central Avenue, Apt. #1.  The tipster described the first tenant, Actor 1, as a white male, tall, medium build, blond hair, who was later identified as Joseph Williams.  The tipster described Actor 2 as a white female, short, heavy-set, blonde hair who wore glasses, later identified as Margaret Chapin.  (*Id.*).  The tipsters believed that the two actors were possibly selling drugs, and that they regularly walked down Bleeker Street where they would conduct business.  (*Id.*).

During surveillance, Sergeant Reyes witnessed what he believed to be a drug transaction. Sergeant Reyes observed a white female matching the description of Actor 2 exit 448 Central Avenue and stand in front of her building as if she was waiting for someone.  She appeared nervous and paced back and forth in front of the vestibule.  Then, a Hispanic male approached her and handed her green currency, before the two of them went back into the building with the Hispanic male only exiting a short time later.  (*Id.*).  After the Hispanic male exited, Ms. Chapin reappeared and stood in front of 448 Central Avenue, appearing nervous, and pacing back and forth in front of the building.  Then, she walked toward Bleeker Street.  (*Id.*).

Combining experience and observation, Sergeant Reyes believed Ms. Chapin was meeting a customer, so he notified perimeter units of the direction in which Ms. Chapin

---

[2] Unless otherwise noted, the facts in this section are from Defendants' Undisputed Statement of Facts contained in Defendants' Moving Brief.  (Def. Moving Br. at 2-7).  Primary source citations are reproduced in the body of this Opinion for ease of reference.

travelled.  As if waiting for someone, she continuously paced back and forth on Bleeker Street between Pierce Street and Central Avenue.  (*Id.*).  Police Officer Crecco stopped Ms. Chapin and notified her of the investigation.  She immediately surrendered five glassine bags containing heroin from her left pocket.  After being placed into custody and Mirandized, Ms. Chapin said she would cooperate with the investigation because she did not want to go to jail.  To cooperate, she stated that there were four additional bags of heroin in her home.  She continued to state that her boyfriend Joseph Williams was home but that he had nothing to do with her being in possession of heroin.  The Jersey City Defendants responded to Mr. Williams's apartment.  (*Id.*).

## 2.      Disputed Facts

The critical facts in dispute are: (1) whether the officers had consent to enter Mr. Williams's apartment, (Police Report attached as Ex. F. to Def. Moving Br. ("Mr. Williams . . . asked us to enter the apartment and with permission, we proceeded to enter. During the course of our investigation, Mr. Williams finally admitted that there was additional CDS ["Controlled Dangerous Substance"] in the apartment.  He stated that the CDS was next to the T.V., on the T.V. stand in his bedroom.")); (2) whether the officers kicked in the door, hitting Mr. Williams in the head, and proceeded to search the apartment for drugs without Mr. Williams's consent, (D.E. 115-1, Def. Moving Br. Ex. A, "Am. Compl.," ¶¶ 5b-5c ("Heriberto Carratini unlawfully entered [Williams's] premises by kicking open the door to his apartment, which struck him in the forehead, subsequently knocking [Williams] to the floor.")); Plaintiff's Deposition Transcript, "Pl. Tr.," 32:19-20 attached as Ex. E to Def. Moving Br. (stating that the Jersey City police officers "kicked the door in" and this act was "excessive use of force"); Pl. Tr. 32:23-24 (stating that "[t]he door hit me in the head so that was another piece of excessive force")); (3) whether, during the search of Mr. Williams's apartment, unnamed female officer

Jane Doe strip-searched Mr. Williams's daughter Jeannie Marie Cerello while the other officers looked on, (Am. Compl. ¶ 5n ("Defendant, Heriberto Carratini, knowingly, willingly, intentionally, maliciously, and recklessly, further did cause emotional distress to [Plaintiff] by instructing Officer Jane Doe to strip-search [Plaintiff's] daughter, Jeanine Cerello, in the bathroom of said apartment, while other Defendants did watch her disrobe, and over her objections to this event.")); (4) whether, back at the station house, the officers falsified reports surrounding the circumstances of Mr. Williams's arrest, (*id.* ¶ 5d ("Heriberto Carratini, with the aid of Defendants Reyes, Crecco, Figeroa, and Infantes did first take custody of him with handcuffs at gun point, subsequently placing him under arrest, and further, detained him at their Station-house, where falsified reports were filed with charges against him.")); and (5) whether Sergeant Reyes gave false testimony before the grand jury panel to promote the indictments against Plaintiff.  (*Id.* ¶ 5h).

### B.      Procedural History

On September 5, 2006, the Grand Jury of the State of New Jersey returned an indictment against Joseph Williams.  (*See* Indictment attached as Ex. C to Def. Moving Br.).  On January 10, 2007, Plaintiff pled guilty to Conspiracy to Distribute CDS. (*See* Judgment of Conviction attached as Ex. D to Def. Moving Br.).  On May 14, 2008, Williams filed suit in this Court seeking *in forma pauperis* status, which the Honorable Jose L. Linares granted on July 31, 2008. In his Order, Judge Linares dismissed the complaint against some Defendants, but permitted the claims against Defendants Carratini, Reyes, Figeroa, Crecco, Infantes, and Jane Doe to go forward past *sua sponte* dismissal.  (D.E. 4 at 1-2).  On May 5, 2009, Judge Linares denied Plaintiff's request for *pro bono* counsel and rejected Defendants' statute of limitations defense. (D.E. 27 at 6).  Additionally, Judge Linares dismissed—with prejudice—Plaintiff's malicious

prosecution claim because Plaintiff pled guilty to various drug-related charges in New Jersey Superior Court, Hudson County, on January 10, 2007, and therefore Plaintiff was unable to demonstrate the second element of malicious prosecution, *i.e.*, that the criminal proceeding ended in his favor.  (*Id.*).   Finally, Judge Linares dismissed Plaintiff's § 1983(5) conspiracy claim because the complaint contained no factual allegations of a conspiracy or invidious discrimination against any class of persons. (*Id.*).   On June 9, 2009, Plaintiff appealed the decision.  (D.E. 32).   On June 26, 2009, Defendants answered, and on June 29, 2009, they amended their answer.   (D.E. 36, 38).   On August 21, 2009, the Third Circuit dismissed Plaintiff's appeal, (Docket Number 09-2785), for failure to timely prosecute and pay the requisite fees.  (D.E. 49).  On November 2, 2009, and again on May 27, 2010, Judge Linares denied Plaintiff's requests for *pro bono* counsel.  (D.E. 52, 68).   Plaintiff then requested a number of documents and attempted an appeal further seeking compliance with his document requests; however, the Third Circuit found that "Appellant has not appealed from a final order of the District Court," and therefore, the Third Circuit "dismiss[ed] the appeal for lack of jurisdiction."  (D.E. 119).   The Third Circuit also found that Plaintiff had failed to meet the requirements for the issuance of a writ of mandamus.  (D.E. 119).

On October 28, 2011, following a transfer of the case to the undersigned, Defendants filed the instant motion for summary judgment, raising the arguments addressed below.  (D.E. 115).  On December 21, 2011, Plaintiff requested an extension of time to respond, (D.E. 118), and the Court granted that request, re-attached Defendants' motion as a courtesy to the *pro se* Plaintiff, and explained that "by February 27, 2012, Mr. Williams must review the Government's attached motion for summary judgment, write a response to the arguments that it contains, and effectuate service of process.  If Mr. Williams does not complete these actions by February 27,

2012, the Court will treat the Government's motion for summary judgment as unopposed." (D.E. 120).   Plaintiff failed to file anything to the docket until March 15, 2012, when he requested an additional extension, citing hardship.  (D.E. 122).  On March 20, 2012, Plaintiff filed his response, (D.E. 123, "Pl. Opp. Br."), and in an abundance of courtesy to the *pro se* Plaintiff, the Court accepted the submission.  (D.E. 125).  Defendants then submitted their reply brief.  (D.E. 126, "Def. Reply Br.").  Finally, Plaintiff, without requesting leave to file a sur-reply, submitted a supplemental letter in support of his opposition motion.  (D.E. 127).  The motion is now ripe for decision.  Before deciding the motion, the Court first sets out the numerous federal and state claims at issue.

### C.      Amended Complaint

In his Amended Complaint, Plaintiff primarily alleges that on May 10, 2006, Defendant Carratini "unlawfully entered [Plaintiff's] premises by kicking open the door to his apartment, causing an unprovoked, and further the unwarranted intrusion into his home," (Am. Compl. ¶ 5a), and that the door "struck [Plaintiff] in the forehead, subsequently knocking him to the floor. (*Id.* ¶ 5b).  He alleges that Defendant Carratini "instructed Defendants, Crecco and Figeroa to begin searching the premises for drugs without his oral or written consent, nor a signed search warrant."  (*Id.* ¶ 5c).  Plaintiff further alleges that, during the search, Defendant Carratini instructed female officer Jane Doe to strip-search Plaintiff's daughter, Jeanine Cerello, in the bathroom of the apartment "while other Defendants did watch her disrobe."  (*Id.* ¶ 5n).  Then, with the help of Defendants Reyes, Crecco, Figeroa, and Infantes, Defendant Carratini placed Plaintiff under arrest "with handcuffs at gun point," (*id.* ¶ 5d), and took Plaintiff to the police station where the officers falsified reports containing the charges against him.  (*Id.* ¶ 5e). Following this incident, on September 5, 2006, Defendant Reyes with the aid of Assistant

County Attorney Rinaldi provided false testimony before a Hudson County Grand Jury panel in an effort to promote the indictments against him.  (*Id.* ¶ 5h).

For purposes of clarifying the state of the case for the parties in light of this Opinion, the Court includes the disposition of each claim in the charts below.  Plaintiff's Amended Complaint contains the following nineteen <u>"federal" counts</u>.

| Federal Count | Disposition |
| --- | --- |
| **Count I:** 42 U.S.C. § 1983 excessive use of force against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe | Judgment Reserved |
| **Count II:** 42 U.S.C. § 1983 unlawful arrest against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe | Summary Judgment Granted; Claim Dismissed |
| **Count III:** 42 U.S.C. § 1983 unreasonable search and seizure against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe | Judgment Reserved |
| **Count IV:** 42 U.S.C. § 1983 "under color of state law" against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe | Dismissed Without Prejudice |
| **Count V:** 42 U.S.C. §§ 1983, 1985(1), (2), (3) conspiracy against Carratini, Reyes, Figeroa, Crecco, Infantes | Section 1983: Judgment Reserved<br><br>Section 1985: Dismissed Without Prejudice |
| **Count VI:** 42 U.S.C. § 1986 "failure to prevent conspiracy" Carratini, Reyes, Figeroa, Crecco, Infantes | Judgment Reserved |
| **Count VII:** 42 U.S.C. § 1983 "failure to intercede in wrongs" against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe | Dismissed Without Prejudice |
| **Count VIII:** 42 U.S.C. § 1983 "failure to train and adequately supervise" against Carratini (official and individual capacity), Reyes, Figeroa, Crecco, Infantes | Summary Judgment Granted; Claim Dismissed |
| | |

| | |
|---|---|
| **Count IX:** 42 U.S.C. § 1983 "falsification of official reports" against Carratini, Reyes, Figeroa, Crecco, Infantes | Judgment Reserved |
| **Count X:** 42 U.S.C. § 1983 "official misconduct" against Carratini, Reyes, Figeroa, Crecco, Infantes | Dismissed Without Prejudice |
| **Count XI:** 42 U.S.C. § 1983 "fraudulent fabrication of evidence" against Carratini, Reyes, Figeroa, Crecco, Infantes | Judgment Reserved |
| **Count XII:** 42 U.S.C. § 1983 "perjury" against Reyes | Summary Judgment Granted; Claim Dismissed |
| **Count XIII:** 42 U.S.C. § 1983 "abuse of process" against Carratini, Reyes, Figeroa, Crecco, Infantes | Summary Judgment Granted; Claim Dismissed |
| **Count XIV:** 42 U.S.C. § 1983 "denial of due process and equal protection" against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe | Judgment Reserved |
| **Count XV:** 42 U.S.C. § 1983 "intentional infliction of emotional distress" against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe | Summary Judgment Granted; Claim Dismissed |
| **Count XVI:** 42 U.S.C. § 1983 "fraudulent concealment of evidence" against Carratini, Reyes, Figeroa, Crecco, Infantes | Judgment Reserved |
| **Count XVII:** 42 U.S.C. § 1983 "obstruction of justice" against Carratini, Reyes, Figeroa, Crecco, Infantes | Summary Judgment Granted; Claim Dismissed |
| **Count XVIII:** 42 U.S.C. § 1983 "judicial deception" against Carratini, Reyes, Figeroa, Crecco, Infantes | Judgment Reserved |
| **Count XIX:** 42 U.S.C. §§ 1983, 1985(1), (2), (3) "conspiracy" against Assistant Public Defender Peterson | Section 1983: Judgment Reserved<br><br>Section 1985: Dismissed Without Prejudice |

Plaintiff's Amended Complaint contains the following twelve "New Jersey State Claims":

| State Count | Disposition |
|---|---|
| **Count I:** "excessive use of force" against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe | Judgment Reserved |
| **Count II:** "unlawful arrest" against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe | Summary Judgment Granted; Claim Dismissed |
| **Count III:** "unreasonable search and seizure" against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe | Judgment Reserved |
| **Count IV:** "conspiracy" against Carratini, Reyes, Figeroa, Crecco, Infantes | Judgment Reserved |
| **Count V:** "falsification of official reports" against Carratini, Reyes, Figeroa, Crecco, Infantes | Judgment Reserved |
| **Count VI:** "official misconduct" against Carratini, Reyes, Figeroa, Crecco, Infantes | Dismissed Without Prejudice |
| **Count VII:** "perjury" against Sergeant Reyes | Summary Judgment Granted; Claim Dismissed |
| **Count VIII:** "fraudulent fabrication of evidence" against Carratini, Reyes, Figeroa, Crecco, Infantes | Judgment Reserved |
| **Count IX:** "abuse of process" against Carratini, Reyes, Figeroa, Crecco, Infantes | Summary Judgment Granted; Claim Dismissed |
| **Count X:** "denial of due process and equal protection under the law" against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe | Judgment Reserved |
| **Count XI:** "intentional infliction of emotion distress" against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe | Summary Judgment Granted; Claim Dismissed |
| **Count XII:** "negligent hiring, training, supervision, and retention" against Carratini | Summary Judgment Granted; Claim Dismissed |

| (official and individual capacity) | |
|---|---|

## III.    Legal Standards

### A.        Summary Judgment

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Azur v. Chase Bank, USA, Nat'l Ass'n*, 601 F.3d 212, 216 (3d Cir. 2010).  A genuine issue of material fact exists for trial when—in viewing the record and all reasonable inferences drawn from it in the light most favorable to the non-movant—a reasonable finder of fact could return a verdict for the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  "To be material, a fact must have the potential to alter the outcome of the case." *DeShields v. Int'l Resort Props.*, No. 11-2672, 2012 U.S. App. LEXIS 3580, at *5 (3d Cir. Feb. 23, 2012) (internal citation omitted).

The movant bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Azur*, 601 F.3d at 216.  Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  A scintilla of evidence in support of the non-movant's position is insufficient to oppose a summary judgment motion successfully; instead, "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.  "Credibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ."

### B.      Federal Rule of Civil Procedure 8

Rule 8(a) mandates that Plaintiffs' complaint set forth: (1) a short and plain statement of the grounds upon which the Court's jurisdiction depends; (2) a short and plain statement of the claim showing that Plaintiffs are entitled to relief; and (3) a demand for the relief sought. Fed. R. Civ. P. 8(a). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only fair notice, but also the grounds on which the claims rests." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (citation omitted).

Complaints filed *pro se* are "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).  The Court is obligated to use "less stringent standards than formal pleadings drafted by lawyers." *Id*.  However, the relaxed standard does not relieve a *pro se* litigant of the duty to give fair notice.  "[A] situation may arise where . . . the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8." *Phillips*, 515 F.3d at 233 (citation omitted).

"Before dismissing a *pro se* complaint, district courts should expressly state, where appropriate, that the plaintiff has leave to amend . . . .  One appropriate circumstance is where the complaint suffers from a lack of factual specificity." *Francis v. State of N.J. Office of Law Guardian*, 289 F. App'x 472, 473 (3d Cir. 2008) (quoting *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000) (internal quotation marks omitted)).  A district court is not required to grant leave to amend a complaint if it becomes clear that the plaintiff cannot, or will not, properly cure the complaint. *See Hoffenberg v. Bumb*, 446 F. App'x 394, 399 (3d Cir. 2011) (upholding denial of further leave to amend for defendant's "inexplicable failure to plead in conformity with the rules,

- 11 -

despite four chances to amend . . . ."); *Rhett v. N.J. State Superior Court*, 260 F. App'x 513, 516 (3d Cir. 2008) (per curium) (affirming the district court's dismissal *sua sponte* with prejudice of a second amended complaint because further amending would be "futile").

### C.   42 U.S.C. §§ 1983 and the Fourth Amendment

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.  42 U.S.C. § 1983 provides plaintiffs with a method of vindicating federal rights, such as those provided in amendments to the Constitution.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) ("[Section] 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.") (quotations and citations omitted).  Section 1983 claims are cognizable if a plaintiff "has asserted the violation of a constitutional right by someone acting under color of state law." *Derrickson v. Dist. Attorney of Del. Cnty.*, 316 F. App'x 132, 133 (3d Cir. 2009).  The statute provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

IV.     **Discussion**

Below, the Court addresses each of Plaintiff's federal and state law claims, setting forth the disposition of each claim as well as the corresponding rationale. The claims' dispositions fall into three general categories. First, the Court grants summary judgment as to one group of claims because the claims fail as a matter of law, Defendants have satisfied their moving burden, and Plaintiff has failed to raise a genuine issue of material fact. Second, the Court reserves its decision on a group of claims—namely, claims related to the key fact in dispute, whether Defendants had consent to enter Plaintiff's apartment—pending supplemental briefing on the issues raised as to those claims. Third, the Court dismisses a final group of claims under Rule 8. For those claims, the Court grants Plaintiff leave to amend within fifteen days of the date of this Opinion. If Plaintiff fails to cure the deficiencies of these claims, as outlined by the Court, the Court will dismiss these claims with prejudice.[3]

A.      **Count I: 42 U.S.C. § 1983 Excessive Use of Force Against Carratini, Reyes, Figeroa, Crecco, Infantes, and Jane Doe**

The Court reserves judgment on this Count because it relates to the key issue in the case, whether Plaintiff gave his consent to Defendants before they entered his apartment where they found heroin. The Court provides the following discussion to focus the issues for purposes of supplemental briefing.

Excessive force claims are cognizable under § 1983 where plaintiff demonstrates that a "seizure" occurred and that it was "unreasonable." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 599 (1989) ("'Seizure' alone is not enough for § 1983 liability; the seizure must be 'unreasonable.'"). "Determining whether the force used to effect a particular seizure is 'reasonable' under the

---

[3] There is nothing in this Opinion or the accompanying Order that permits Plaintiff to add any new claims that he has not already pled in his Amended Complaint. Accordingly, the Court will not permit Plaintiff to add any new claims to his Second Amended Complaint (if he chooses to file one) without formally moving under Rule 15.

Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quotations omitted).

Plaintiff alleges that on May 10, 2006, "Defendant Heriberto Carratini, unlawfully entered his premises by kicking open the door to his apartment, which struck him in the forehead, subsequently knocking him to the floor," (Am. Compl. ¶ 5b), that Defendants Carratini, with the aid of Defendants Reyes, Crecco, Figeroa, and Infantes "did first take custody of him with handcuffs at gun point," (*id.* ¶ 5d), that Defendants Carratini, Reyes, Figeroa, Crecco, Infantes, and Jane Doe "abused their badge of authority by unlawfully taking control over him and his possessions." (*Id.* ¶ 5e). In their motion for summary judgment, Defendants argue that Plaintiff's excessive use of force claim fails as a matter of law because such a claim requires Plaintiff to show that a seizure occurred and that the seizure was unreasonable, and Plaintiff has shown neither. (Def. Moving Br. at 11-12). In support of their position, Defendants attach the Police Report, (Ex. F to Def. Moving Br.), Plaintiff's deposition transcript, (Ex. E to Def. Moving Br.), and the Certification of Sergeant Miguel Reyes, ("Reyes Cert." attached to Def. Reply Br., D.E. 126-1), which all demonstrate that Plaintiff provided the officers with consent to enter the apartment, undermining the unreasonableness of any resulting seizure. In opposition, Plaintiff argues that although Sergeant Reyes claims that Plaintiff gave consent, "the Plaintiff now does submit enlarged copies of photographs taken of his bedroom from the date in question. Well, it is said that a picture says a thousand words and these pictures do depict a different story of the truth." (Pl. Sur-Reply at 2 & Ex. B (attaching pictures of items strewn across a bed in a dwelling in disarray)).

Accordingly, the critical issues before the Court for purposes of Defendants' motion for summary judgment are whether a "seizure" occurred and, if so, whether that seizure was "unreasonable."   When asked about excessive force during his deposition, Plaintiff focused on the officers' entry into his apartment:

> Q: So one count is excessive use of force.  If you could tell me exactly what you mean by excessive use of force or like what exactly what happened that day on May 10, 2006 that was an excessive use of force.
>
> A: He kicked the door in.  That's excessive use of force.
>
> Q: Okay.  Anything else?
>
> A: When he hit me in the head, that was excessive force, too.  The door hit me in the head so that was another piece of excessive force.

(Pl. Tr. 32:14-24).

As to the "seizure" element, Defendants argue only that, "Plaintiff failed to show that a 'seizure' had occurred . . . ." (Def. Moving Br. at 12).   Accordingly, it is unclear whether Defendants' argument is factual or legal in nature.  It is unclear, for example, if Defendants argue that they never kicked down the door because Plaintiff provided consent, or that, even if Defendants did kick down the door, that act would not legally constitute or lead to a seizure.  As Defendants know, more than one seizure can occur when officers enter an apartment, find heroin, and arrest the occupant.

As to the "unreasonableness" element, the record on summary judgment contains conflicting facts, which the Court would like to explore more deeply via supplemental briefing. To satisfy their moving burden, Defendants point to facts in the record demonstrating that Plaintiff provided consent, which would demonstrate that Defendants did not need to kick down the door in an unreasonable manner.  (*See* Police Report ("We then responded to 448 Central Ave., apt. #1, and advised Mr. Williams of Ms. Chapin's arrest for possession of CDS.  We also

- 15 -

advised him that Ms. Chapin stated that there were [sic] additional CDS in the house.  Mr.

Williams adamantly denied any additional CDS in the house.  Mr. Williams then *asked us to*

*enter the apartment and with permission, we proceeded to enter*.  During the course of our

investigation, Mr. Williams finally admitted that there was additional CDS in the apartment.  He

stated that the CDS was next to the T.V., on the T.V. stand in his bedroom.  We asked him to

retrieve the heroin[], followed by Mr. Williams being placed into custody.") (emphasis added);

Reyes Cert. ¶ 13 ("Plaintiff adamantly denied that there was additional CDS in the house.

Plaintiff gave us consent to enter the apartment.")).  The Court finds that these materials taken

together satisfy Defendants' moving burden.  The Court's focus for purposes of supplemental

briefing, therefore, will be on whether Plaintiff has raised a genuine issue of material fact as to

which a reasonable juror could find for Plaintiff.

     In addition to the door-kicking allegations contained in the Amended Complaint, Plaintiff

supports his excessive force theory with two certifications from his daughter, Jeanine Marie

Cerello, who claims she witnessed the event, in addition to pictures that Plaintiff alleges were

taken following the search of his apartment.  In her August 3, 2009 certification, Ms. Cerello

stated, "I am an eyewitness to the Unlawful Acts that where [sic] committed by the Jersey City

Defendants on May 10, 2006."  (D.E. 45 ¶ 5).  Ms. Cerello "s/slashed" the certification and

"declare[d] under penalty of perjury that the above foregoing statement is true and correct."

(*Id.*).  In her May 7, 2012 certification, Ms. Cerello stated, "[o]n May 10, 2006, an Officer from

the Jersey City Police Department kicked open the front door to my home at 448 Central

Avenue, Apt. 1.  I later learned from the Police Report that his name was Sergeant Heriberto

Carratini from the North District of the Jersey City Police Dept."  (D.E. 127 ¶ 3).  Finally,

Plaintiff submitted pictures depicting a room in disarray, including a photo-copy of an envelope of negatives bearing the date "6/1/06."  (Ex. B to Pl. Sur-Reply).

Accordingly, the Court will reserve judgment on the issue of whether Plaintiff has raised a genuine issue of material fact.  In supplemental briefing, the Court requests that the parties marshal *all* of the evidence supporting their positions.[4]

### B.   Count XVIII: 42 U.S.C. § 1983 "Judicial Deception" Against Carratini, Reyes, Figeroa, Crecco, Infantes

The purpose of a judicial deception claim under § 1983 is to "challenge[] the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer . . . ."  *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997).  To do so the plaintiff must satisfy the two-part test developed by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978).  *Sherwood*, 113 F.3d at 399.  "Under *Franks* and its progeny, the plaintiff must prove, by a preponderance of the evidence, (1) that the affiant knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to the finding of probable cause.  *Id.* (citing *Franks*, 438 U.S. at 171-72).

Here, Plaintiff claims that Defendants lied in the Police Report.  Defendants argue that the Police Report was not used to apply for a warrant, and therefore Plaintiff fails under the *Franks* analysis.  (Def. Moving Br. at 34-35).  However, it appears that Plaintiff bases his claim of judicial deception upon the allegation that Sergeant Reyes lied to the grand jury to establish probable cause in support of an indictment.  Because Sergeant Reyes's purported lies could only

---

[4] Plaintiff's state Count I mirrors this federal claim.  Accordingly, the Court's decision and reasoning as to this federal claim applies to state Count I as well.  *Lamb v. Wysocki*, No. 06-2166, 2008 WL 1732973, at *3 n.4 (D.N.J. April 10, 2008) (analyzing Plaintiff's parallel state and federal claims for excessive force, false arrest/false imprisonment, and malicious prosecution under the federal standards); *see also Badalamente v. Monmouth Cnty. Prosecutor's Office*, No 08-2501, 2011 WL 1898833, at *6 (D.N.J. May 17, 2011) ("New Jersey courts apply the federal standard when addressing excessive force claims brought under the state constitution.").

stem from his claim of consent, the Court's determination will involve similar issues as the reserved decision for Count I.  Accordingly, the Court will reserve its decision on Count XVIII, and the Court will permit the parties to address this Count in their supplemental briefs.

### C.    Count II: 42 U.S.C. § 1983 Unlawful Arrest Against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe

To prevail on a claim for false arrest under § 1983, a plaintiff must prove that the officers arrested and charged him without probable cause.  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 634 (3d. Cir. 1995) (citation omitted).  Probable cause exists if at the time of the arrest and charging, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense."  *Beck v. Ohio*, 379 U.S. 89, 91 (1964) (citation omitted).  Additionally, a grand jury indictment establishes probable cause by definition.  *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 251 (3d Cir. 2001) ("[T]he evidence of their guilt was sufficient to support a grand jury indictment.  That indictment establishes probable cause by definition, and it does not evaporate simply because the prosecutor later decided that subsequent events compromised Rodriguez's value as a witness."); *Pittman v. McDuffy*, No. 04-4505, 2006 WL 758308, at *2 (D.N.J. Mar. 21, 2006) ("[A] Grand Jury found probable cause to enter an indictment against [plaintiff] for criminal trespass. . . .  As such, [plaintiff] cannot sustain a claim for false arrest or malicious prosecution, and these claims are dismissed.") (citing *Trabal*, 269 F.3d at 251); *Davis v. United States*, No. 03-1800, 2004 U.S. Dist. LEXIS 2551, at *19 (S.D.N.Y. Feb. 18, 2004) ("A grand jury indictment creates a presumption of probable cause in New Jersey as a matter of law.").

Here, Plaintiff claims that he was unlawfully arrested on May 10, 2006.  However, on September 5, 2006, a Superior Court Grand Jury returned an indictment for, among other

charges, "knowingly or purposely . . . possess[ing] a controlled dangerous substance, that is, heroin."  (Indictment attached as Ex. C. to Def. Moving Br.).  This grand jury indictment satisfies Defendant's moving burden.

To raise a genuine issue of material fact calling the indictment into question, Plaintiff argues that Sergeant Reyes lied to the grand jury by providing false and misleading testimony. (Pl. Opp. Br. at 2).  Specifically, Plaintiff argues that Sergeant Reyes lied during his testimony when he provided conflicting answers regarding the officers' basis for probable cause.  (*Id.*).  In one portion of Sergeant Reyes's testimony, he stated that although the officers attempted to locate a Hispanic male with whom the officers had seen Ms. Chapin exchange green currency outside Mr. Williams's apartment building, the officers were not able to find the Hispanic male. (Reyes Grand Jury Tr. 6:6-9).  In a later portion of his testimony, Sergeant Reyes engaged in the following exchange:

> Q: All right. And do you have an opinion as to whether or not Ms. Chapin and Mr. Williams possessed this heroin with the intent to distribute?
>
> A: Yes, we do.
>
> Q: And what do you base that on?
>
> Q: Well, the first—we based it on the first transaction with the man—with the unidentified *Hispanic male*, and the quantity she had on her and what recovered it—what we recovered in her house and the amount of money that was recovered.

(Reyes Grand Jury Tr. 11:3-12) (emphasis added).  The Court finds that these two statements are entirely consistent, because the officers' inability to find the Hispanic male does not mean the officers were incapable of witnessing a transaction between Ms. Chapin and the Hispanic male involving green currency, which the officers did see.  Additionally, Sergeant Reyes's grand jury testimony is consistent with the Police Report, which stated that Ms. Chapin "was approached by a Hispanic male . . . .  A short conversation ensued, followed by the Hispanic male handing her

green currency and then following Ms. Chapin inside a building," but that when the officers provided a description of the Hispanic male to perimeter units, the "search of the Hispanic male for investigation purposes proved negative." (Police Report attached as Ex. F to Def. Moving Br.). Accordingly, based on the facts in the summary judgment record before the Court, the Court finds that no reasonable juror could find credible Plaintiff's theory that Sergeant Reyes lied to the grand jury and undercut the indictment's presumption of probable cause, based on Plaintiff's theory, which appears to be that the purported lies in the Police Report and the grand jury testimony are related to Sergeant Reyes's comments regarding the Hispanic male. The Court therefore grants summary judgment for Defendants, and dismisses Plaintiff's false arrest claim.[5]

---

[5] Plaintiff's state Count II mirrors this federal claim. Accordingly, the Court's decision and reasoning as to this federal claim applies to state Count II as well. *Lamb*, 2008 WL 1732973, at *3 n.4 (analyzing Plaintiff's parallel state and federal claim for false arrest under the federal standards).

**D.**   **Count III: 42 U.S.C. § 1983 Unreasonable Search and Seizure Against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe[6]**

**Count IX: 42 U.S.C. § 1983 "Falsification of Official Reports" Against Carratini, Reyes, Figeroa, Crecco, Infantes[7]**

**Count XI: 42 U.S.C. § 1983 "Fraudulent Fabrication of Evidence" Against Carratini, Reyes, Figeroa, Crecco, Infantes[8]**

**Count XVI: 42 U.S.C. § 1983 "Fraudulent Concealment of Evidence" Against Carratini, Reyes, Figeroa, Crecco, Infantes**

In *Heck v. Humphrey*, the Supreme Court held:

[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint *must be dismissed* unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed . . . .

512 U.S. 477, 487 (1994) (emphasis added as to "must be dismissed").   Accordingly, the Supreme Court engaged in a two-part inquiry under *Heck*: (1) whether a judgment in favor of plaintiff would *necessarily* imply the invalidity of the conviction; and (2) whether the conviction has already been invalidated.

Under the first inquiry, the Supreme Court has explained:

---

[6] Plaintiff's state Count III mirrors this federal claim.  Accordingly, the Court's decision and reasoning as to this federal claim applies to state Count III as well.  *Hedges v. Musco*, 204 F.3d 109, 120 n.12 (3d Cir. 2000) ("Having established that there was no federal constitutional violation, defendants must also prevail on plaintiffs' claims under Article I, paragraph 7 of the New Jersey Constitution.").

[7] Generally, courts in New Jersey have recognized that causes of action arising under the State Constitution are "analogues to Section 1983 and [are] often interpreted in virtually the same manner as [their] federal counterparts." *Jefferson v. Twp. of Medford*, No. 08-6269, 2010 WL 5253296, at *13 (D.N.J. Dec. 16, 2010); *see also Chapman v. State*, No. 08-4130, 2009 WL 2634888, at *3 (D.N.J. Aug. 25, 2009).  Plaintiff's state Count V mirrors this federal claim.  Accordingly, the Court's decision and reasoning as to this federal claim applies to state Count V as well.

[8] Similarly, Plaintiff's state Count VIII mirrors this federal claim.  Accordingly, the Court's decision and reasoning as to this federal claim applies to state Count VIII as well.  *Jefferson*, 2010 WL 5253296, at *13; *see also Chapman*, 2009 WL 2634888, at *3.

> [A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction. Because of doctrines like *independent source and inevitable discovery*, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful.

*Heck*, 512 U.S. at 487 n.7 (emphasis added) (internal citations omitted). Accordingly, "[i]n determining whether the claim necessarily invalidates the underlying conviction, the district court must look both to the claims raised under § 1983 and to the specific offenses for which the § 1983 claimant was convicted. Where the circumstances surrounding the conviction are unknown from the record, it is difficult for the district court to determine whether the § 1983 claim necessarily implies the invalidity of the conviction." *Johnson v. Fla. Dep't of Law Enforcement*, 264 F. App'x 785, 786 (11th Cir. 2008) (quotations and citations omitted).

Here, Defendants argue only that "Plaintiff's unreasonable search and seizure claim must be dismissed with prejudice because a judgment in favor of Plaintiff for an unreasonable search and seizure claim would necessarily imply the invalidity of his conviction of *Conspiracy* to Distribute CDS. He would not have been found to have conspired with his girlfriend to distribute CDS which he pled guilty to on January 10, 2007." (Def. Moving Br. at 15-16) (emphasis in original). However, without further clarification from Defendants, it is difficult for the Court to determine how a finding that Defendants' entry into Plaintiff's apartment was unreasonable would *necessarily* imply the invalidity of Plaintiff's conviction for conspiracy, in light of the unreasonable search and seizure language in *Heck v. Humphrey* and its progeny.

The Court will reserve its decision of this claim until receiving supplemental briefing on this issue.[9] Because Defendants also rely on *Heck v. Humphrey* for their arguments in support of

---

[9] Defendants are also permitted to address *Heck*'s application to the post-incarceration context. Because of the Court's reservation of a decision on the first inquiry of *Heck*, the Court also reserves on the second inquiry of *Heck*

summary judgment on Counts IX ("Falsification of Official Reports), XI ("Fraudulent Fabrication of Evidence"), and XVI ("Fraudulent Concealment of Evidence"), the Court will reserve judgment on those claims as well.

> **E.   Count IV: 42 U.S.C. § 1983 "Under Color of State Law" Against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe**

Plaintiff's "under color of state law" claim fails under Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Court understands Count IV—"Federal Civil Rights Claim of 'Under Color of State Law,'" (Am. Compl.)—to be Plaintiff's attempt to vindicate his federal rights under § 1983, but the Count fails to specify the particular federal rights to be vindicated and which facts relate to a deprivation of those rights; therefore, the claim fails to provide notice to the Defendants.  To the extent Plaintiff considers Count IV to be something separate from his other eighteen federal claims, he is permitted to amend Count IV within fifteen days of this Opinion.  If Plaintiff chooses to amend, he is required to point to the specific federal rights at issue in addition to the facts supporting the claim.  Accordingly, the Court dismisses Count IV without prejudice.

> **F.   Count V: 42 U.S.C. §§ 1983, 1985(1), (2), (3) Conspiracy Against Carratini, Reyes, Figeroa, Crecco, Infantes**
>
> **Count XIX: 42 U.S.C. §§ 1983, 1985(1), (2), (3) "Conspiracy" Against Assistant Public Defender Peterson**[10]

> **1.   Section 1983 Conspiracy**

The principal elements of a conspiracy are (1) "an agreement between the parties to inflict a wrong against or injury upon another" and (2) "an overt act that results in damage."

---

as well as exigent circumstances, which the Defendants have briefed in connection with Plaintiff's unreasonable search and seizure claim.

[10] Plaintiff's state Counts IV and VIII mirror these federal claims.  Accordingly, the Court's decision and reasoning as to these federal claims apply to state Counts IV and VIII as well.  *Jefferson*, 2010 WL 5253296, at *13; *see also Chapman*, 2009 WL 2634888, at *3.

*Adams v. Teamsters Local 115*, 214 F. App'x 167, 172 (3d Cir. 2007) (quotations omitted). "In order to demonstrate the existence of a conspiracy under section 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *Royster v. Beard*, 308 F. App'x 576, 579 (3d Cir. 2009) (quoting *Parkway Garage, Inc. v. Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003)). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010) (citing *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992); *see also Startzell v. Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008) (stating that a conspiracy requires a "meeting of the minds") (internal citation and quotation marks omitted).

Because the Court has reserved decision pending oral argument to learn more about Plaintiff's door-kicking theory and Defendants' claim of consent—which could impact Plaintiff's ability to show an overt act—the Court will not judge Plaintiff's § 1983 conspiracy claim at this time.  Accordingly, the Court will not address Defendants' "agreement" arguments at this time, and therefore the Court will reserve judgment on federal Counts V and XIX and state Count IV.

2.        **Section 1985 Conspiracy**[11]

In his May 5, 2009 Opinion, Judge Linares dismissed Plaintiff's § 1985(3) conspiracy claim because there was no conspiracy alleged and because "the Complaint lack[ed] any allegation, as required in a § 1985(3) case, that there was any 'invidious' discrimination against any class of persons."  (D.E. 27 at 7).  In Plaintiff's Amended Complaint, he alleges his § 1985 conspiracy claim under §§ 1985(1), (2), and (3).  Because Plaintiff does not include any facts in

---

[11] 42 U.S.C. § 1985 provides:

(1) Preventing officer from performing duties: If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties;

(2) Obstructing justice; intimidating party, witness, or juror: If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws;

(3) Depriving persons of rights or privileges: If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

his recitation of Counts V or XIX, it is unclear to the Court which, if any, of the § 1985 subsections apply to his claim.  Accordingly, Plaintiff will be given one more chance to amend this claim setting forth exactly what facts apply to his § 1985 claims and exactly which § 1985 subsection(s) those facts support.  To the extent Plaintiff fails to comply with this instruction, the Court will dismiss Plaintiff's § 1985 claims—V and XIX, and corresponding state claims—with prejudice.

### G.    Count VI: 42 U.S.C. § 1986 "Failure to Prevent Conspiracy" Carratini, Reyes, Figeroa, Crecco, Infantes[12]

"[Section] 1986 constitutes an additional safeguard for those rights protected under 42 U.S.C. § 1985, and 'transgressions of § 1986 by definition depend on a preexisting violation of § 1985 . . . .' Additionally, a § 1986 plaintiff must show that: (1) the defendant had actual knowledge of a § 1985 conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a § 1985 violation, (3) the defendant neglected or refused to prevent a § 1985 conspiracy, and (4) a wrongful act was committed." *Clark v. Clabaugh*, 20 F.3d 1290, 1295-96 (3d Cir. 1994) (citations omitted).  Because Plaintiff's § 1986 claim is based on his § 1985 claim, and because Plaintiff will have a chance to amend that claim, the Court will reserve judgment on Plaintiff's § 1986 claim.

---

[12] 42 U.S.C. § 1986 provides:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

**H.      Count VII: 42 U.S.C. § 1983 "Failure to Intercede in Wrongs" Against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe**

Plaintiff's claim for "failure to intercede in wrongs" fails under Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." The Court understands Count VII to be Plaintiff's attempt to hold some officers accountable for allegedly failing to intercede on Plaintiff's behalf while other officers deprived Plaintiff of his civil rights. *See Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997) ("Failure to intercede to prevent an unlawful arrest can be grounds for § 1983 liability.  To recover on that ground, of course, a plaintiff must still overcome the hurdle of qualified immunity.  A police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's 'clearly established statutory or constitutional rights' of which a reasonable person would have known.") (citations omitted quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  However, Plaintiff fails to explain which facts underlie this claim, including which action deprived Plaintiff of his rights, which rights Plaintiff alleges were deprived, which Defendants deprived Plaintiff of his rights, and which Defendants failed to intercede.  To the extent Plaintiff considers Count VII to be something separate from his other eighteen federal claims, he is permitted to amend Count VII within fifteen days of this Opinion.  If Plaintiff chooses to amend, he is required to point to the specific federal rights at issue in addition to the facts supporting the claim.  Accordingly, the Court dismisses this count without prejudice.

**I.      Count VIII: 42 U.S.C. § 1983 "Failure to Train and Adequately Supervise" Against Carratini (Official and Individual Capacity), Reyes, Figeroa, Crecco, Infantes**

The Court grants summary judgment as to Count VIII because Plaintiff fails to identify a policy, practice, or custom that violates his constitutional rights, and he fails to make a showing

of "deliberate indifference."   Assuming Plaintiff was to amend to cure his omission of Jersey City as a Defendant,[13] it would still be true that plaintiffs can only sue municipalities "directly under section 1983 where action pursuant to a municipal policy or custom causes a constitutional tort."   *Fagan v. Vineland*, 22 F.3d 1283, 1291 (3d Cir. 1994).   "Where, as here, the policy in question concerns a failure to train or supervise municipal employees, liability under § 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact."   *Carter v. Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989).   In order to demonstrate deliberate indifference, Plaintiff must show: "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."   *Id.* at 357 (citing *Walker v. New York*, 974 F.2d 293, 297-98 (2d Cir. 1992)).   Plaintiff's claim fails for two reasons.

First, Plaintiff's claim fails because he does not identify a specific policy or practice supporting his claim; indeed, Plaintiff admits that he is aware of no such policy:

Q: Okay.  Do you know of any custom or policy of the city that violates peoples' rights?

A: I don't know.  No.  But if they don't train them properly, that violates your rights.

Q: Do you know of any training or lack of training thereof that the officer—

A: I don't think the police officer is supposed to kick your door in if you don't answer the door, so that would be somebody who didn't train Sergeant Carratini correctly.

---

[13] Plaintiff fails to name the City of Jersey City as a Defendant in this matter, despite the fact that this Count appears to target the municipal entity.  (*See* Am. Compl. ¶ 3m ("[T]he City of Jersey totally was absent in its responsibility to properly oversee the development of the necessary skills, that are the standard requirement for all employees to ensure the protection of every private citizen's rights, and to avoid deficiencies while in the performance of any official duty.")).

(Pl. Tr. 30:17-31:2).  Second, even assuming that Plaintiff was able to point to a violative policy, he makes no allegations in his Amended Complaint that municipal policymakers knew that employees would confront a particular situation involving a difficult choice or a history of employees mishandling, or that the wrong choice of an employee in that situation would frequently cause the deprivation of a constitutional right.  Taking all the allegations in the Amended Complaint as a whole in connection with the entire record on summary judgment, it appears that Plaintiff alleges facts of wrongdoing only with respect to his own arrest and the proceedings that arose as a result of that arrest.  The record is devoid of allegations involving a history of similar occurrences or of any policy choices that might have affected the officers who entered Plaintiff's apartment.  Accordingly, viewing the facts in the light most favorable to Plaintiff, Defendants have sustained their moving burden and Plaintiff has failed to point to anything in the record that raises a genuine issue of material fact.  The Court therefore grants summary judgment as to Count VIII, which fails as a matter of law.

> **J.     Count X: 42 U.S.C. § 1983 "Official Misconduct" Against Carratini, Reyes, Figeroa, Crecco, Infantes**

Plaintiff's "official misconduct" claim fails under Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Because Plaintiff has neither set forth any factual basis in the body of the Count nor provided any facts explaining what Plaintiff considers to be "official misconduct" and by whom, the Court is unable to determine if this is a federal claim.  Instead, Count X appears to reference the second-degree criminal offense of "official misconduct."  N.J. Stat. § 2C:30-2; *see also Orsatti v. N.J. State Police*, 71 F.3d 480, 484-85 (3d Cir. N.J. 1995).  Accordingly, the Court dismisses Count X

without prejudice, granting leave to Plaintiff to amend within fifteen days of this Opinion to fix the pleading deficiencies outlined by the Court above.[14]

**K.      Count XII: 42 U.S.C. § 1983 "Perjury" Against Sergeant Reyes**

Police officers testifying before the grand jury have absolute immunity from § 1983 claims. *Briscoe v. Lahue*, 460 U.S. 325, 342 (1983) ("A police officer on the witness stand performs the same functions as any other witness; he is subject to compulsory process, takes an oath, responds to questions on direct examination and cross-examination, and may be prosecuted subsequently for perjury."); *see also Rehberg v. Paulk*, 132 S. Ct. 1497, 1506 (2012) ("[G]rand jury witnesses should enjoy the same immunity as witnesses at trial. This means that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony. In addition . . . this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution.").

Here, Plaintiff's claim "that on September 5, 2006, Defendant Miguel A. Reyes with the aid of Assistant County Attorney, Leonardo V. Rinaldi, willingly, knowingly, intentionally, maliciously, and recklessly gave false testimony before a Hudson County Grand Jury Panel" fails as a matter of law. Accordingly, the Court grants summary judgment and dismisses Count XII.[15]

---

[14] Plaintiff's state Count VI mirrors this federal claim and is similarly deficient. *See State v. Quezada*, 953 A.2d 1206, 1209 (N.J. Super. Ct. App. Div. 2008). The Court dismisses state Count VI without prejudice, granting leave to Plaintiff to amend within fifteen days of this Opinion to fix the pleading deficiencies outlined by the Court above.

[15] Plaintiff's state Count VII is also subject to absolute immunity. Under state law, "[i]t is well-settled that a witness in a judicial or quasi-judicial proceeding enjoys an absolute immunity from civil suit for his words and actions relevant to the judicial proceedings." *Durand Equip. Co. v. Superior Carbon Prods., Inc.*, 591 A.2d 987, 988 (N.J. Super. Ct. App. Div. 1991). Accordingly, Plaintiff's state claim for perjury also fails as a matter of law.

**L.      Count XIII: 42 U.S.C. § 1983 "Abuse of Process" Against Carratini, Reyes, Figeroa, Crecco, Infantes**

"A section 1983 claim for malicious abuse of process lies where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law."  *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989).  "The gravamen of [an abuse of process claim] is not the wrongfulness of the prosecution, but some extortionate perversion of lawfully initiated process to illegitimate ends."  *Heck*, 512 U.S. at 486.  "To establish such a claim, there must be some proof of a definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process."  *Ference v. Twp. of Hamilton*, 538 F. Supp. 2d 785, 798 (D.N.J. 2008) (citation and quotation marks omitted).

Here, the closest Plaintiff comes to alleging "a definite act or threat" or the requisite "aim[] at an objective" is when he alleges "that on January 10, 2007, and upon previous occasions, Defendant, April L. Peterson, knowingly, willingly, intentionally, maliciously, and recklessly did plot with Assistant County Attorney, Leonardo V. Rinaldi, in a jointed effort to protect Jersey City Police Officers with the deprivation of his Constitutional right to a fair trial," and involves parties who are not named in the body of the Count.  Therefore, this allegation fails to satisfy the elements of an abuse of process claim.  Accordingly, "Plaintiff has made no allegations that [defendant] acted with a purpose that was in any way extortionate or otherwise inappropriate.  Thus, [defendant] is entitled to summary judgment on Plaintiff's section 1983 claim of abuse of process."  *Ference*, 538 F. Supp. 2d at 798.[16]

---

[16] Plaintiff's state Count IX mirrors this federal claim, and the Court may apply the same analysis to both abuse of process claims.  *Esposito v. Little Egg Harbor Twp.*, No. 08-3725, 2012 WL 1495468, at *2 (D.N.J. April 27, 2012).  Accordingly, the Court's decision and reasoning as to this federal claim applies to state Count IX as well.

**M.      Count XIV: 42 U.S.C. § 1983 "Denial of Due Process and Equal Protection"
            Against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe**

"The 'Parratt doctrine' prohibits procedural due process claims brought under 42
U.S.C. § 1983 where the state provides the claimant an adequate post-deprivation remedy if (1)
the deprivation was unpredictable or 'random'; (2) predeprivation process was impossible or
impracticable; and (3) the state actor was not authorized to take the action that deprived the
plaintiff of property or liberty." *Dantzler v. Beard*, No. 09-275, 2010 U.S. Dist. LEXIS 107656,
*28-29 (W.D. Pa. Mar. 15, 2010) (quotations and citations omitted); *see generally Parratt v.
Taylor*, 451 U.S. 527 (1981).  "To state a claim under the Equal Protection Clause, a § 1983
plaintiff must allege that a state actor intentionally discriminated against him because of his
membership in a protected class."  *Lande v. Bethlehem*, 457 F. App'x 188, 192 (3d Cir. 2012).

Relying on *Parratt v. Taylor*, Defendants argue, "the Supreme Court held that state
remedies are adequate to satisfy the requirements of due process.  Here, Plaintiff's claim of
'denial of due process and equal protection' should be dismissed because Plaintiff had an
adequate state remedy to satisfy the requirements of due process."  (Def. Moving Br. at 34).
Because it is unclear to the Court whether Defendants have considered whether the *Parratt*
doctrine applies equally to procedural due process, substantive due process, and equal protection
claims, the Court will reserve on this issue providing the parties with an opportunity to elaborate
on their positions as to Count XIV in their supplemental briefs.[17]

---

[17] Plaintiff's state Count X, presumably alleged under the New Jersey Constitution, relates to the federal claim, and
therefore, the Court reserves judgment on state Count X as well.

**N.      State Count XII: "Negligent Hiring, Training, Supervision, and Retention"
Against Carratini (Official and Individual Capacity)**

The Court dismisses with prejudice Plaintiff's claim for negligent hiring, training,

supervision, and retention because Plaintiff failed to file a notice of tort claim under the New

Jersey Tort Claims Act ("NJTCA"), N.J. Stat. § 59:1-1 *et seq.*

"To bring an action in tort against a 'public entity or public employee' in New Jersey, the

claimant must file a notice of claim with the entity within ninety days of the accrual of the claim

or else be 'forever barred' from asserting that cause of action." *Cnty. Concrete Corp. v. Twp. of

Roxbury*, 442 F.3d 159, 174 (3d Cir. 2006) (quoting N.J. Stat. § 59:8-3 and -8) (citing *Moon v.

Warren Haven Nursing Home*, 867 A.2d 1174, 1176 (N.J. 2005).  The NJTCA provides: "No

action shall be brought against a public entity or public employee under this act unless the claim

upon which it is based shall have been presented in accordance with the procedure set forth in

this chapter."  N.J. Stat. § 59:8-3.  Notice is required so that the public entity can engage in

administrative review, settle meritorious claims, and adequately investigate to prepare a defense.

*Id.* § 59:8-4 cmt. (a)-(b).  Section 59:8-3 sets forth the required contents of the notice, § 59:8-6

sets forth additional notice requirements, and § 59:8-7 sets forth the locations at which the claims

must be filed.  Section 59:8-8 sets forth the timing requirements.

> [C]laimant shall be forever barred from recovering against a public entity or
> public employee if:
>
> a. He failed to file his claim with the public entity within 90 days of accrual of his
> claim except as otherwise provided in section 59:8-9; or
>
> b. Two years have elapsed since the accrual of the claim; or
>
> c. The claimant or his authorized representative entered into a settlement
> agreement with respect to the claim.

N.J. Stat. § 59:8-8.  Notably, "[t]he NJTCA's notice requirements do not apply to federal claims, including § 1983 actions or to state constitutional torts."  *Cnty. Concrete Corp.*, 442 F.3d at 174 (citation omitted).  Here, Plaintiff has never filed a notice of claim, and therefore he has failed under all of the timing provisions.  (*See* Kolar Certification, "Kolar Cert.," ¶ 3 attached as Ex. B to Def. Moving Br. ("Plaintiff, Joseph Williams never submitted a notice of tort claim.")). Accordingly, the Court grants summary judgment as to this claim.

## O.     Count XV: 42 U.S.C. § 1983 "Intentional Infliction of Emotional Distress" Against Carratini, Reyes, Figeroa, Crecco, Infantes, Jane Doe

Although Plaintiff pled Count XV as a "federal" claim, intentional infliction of emotional distress is a claim under state common law.  *See Andrews v. Philadelphia*, 895 F.2d 1469, 1486 (3d Cir. 1990); *Tarr v. Ciasulli*, 181 N.J. 70, 87-88 (2004); *Rusak v. Ryan Auto., L.L.C.*, 418 N.J. Super. 107, 120 (App. Div. 2011).  Accordingly, the notice requirement attaches to this claim as well.  Because Plaintiff never filed notice, the Court grants summary judgment as to this claim, which fails as a matter of law.

## P.     Count XVII: 42 U.S.C. § 1983 "Obstruction of Justice" Against Carratini, Reyes, Figeroa, Crecco, Infantes

In Count XVII, Plaintiff claims "'Obstruction of Justice' . . . [under] 42 U.S.C.A. § 1983, and the United States Constitution."  The Court construes Count XVII as a claim under 42 U.S.C. § 1985(2).  The second clause of this provision, related to state court proceedings, "prohibits conspiracy to obstruct justice with the intent to deny equal protection of the laws." *Davis v. Twp. of Hillside*, 190 F.3d 167, 171 (3d Cir. 1999).  To establish a claim under this provision, a plaintiff must demonstrate "that the officers colluded with the requisite racial, or otherwise class-based, invidiously discriminatory animus."  *Id.* (internal quotations and citations omitted).  Plaintiff's Amended Complaint is devoid of any allegations addressing race, class, or

"invidious discriminatory animus."  Accordingly, the Court grants summary judgment on Count

XVII.

**V.      Conclusion**

For the foregoing reasons, the Court will grant in part and deny in part Defendants'

motion for summary judgment.  A corresponding Order will be issued along with this Opinion.

_s/Esther Salas_
**Esther Salas, U.S.D.J.**